EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION,
Plaintiff–Appellee,

v.

LABORERS' INTERNATIONAL UNION
OF NORTH AMERICA, AFL–CIO,
LOCAL 100, Defendant–Appellant.

No. 94–3296.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 20, 1995.

Decided Feb. 27, 1995.

Robert G. Johnson, Gretchen D. Huston, E.E.O.C., St. Louis, MO, Lamont N. White (argued), James R. Neely, Jr., E.E.O.C., Office of General Counsel, Washington, DC, James M. Hipkiss, Office of U.S. Atty., Civ. Div., Fairview Heights, IL, for plaintiff-appellee.

Kevin C. Kaufhold (argued), Kassly, Bone, Becker, Dix, Reagan & Young, Belleville, IL, for defendant-appellant.

Before POSNER, Chief Judge, FLAUM, Circuit Judge, and McDADE, District Judge.[*]

FLAUM, Circuit Judge.

The Equal Employment Opportunity Commission ("EEOC") brought suit against Local 100 of the Laborers' International Union of North America alleging the union failed to file certain reports with the EEOC as required by federal law. The district judge agreed and issued a remedial order commanding the union's compliance as well as requiring it to submit additional information to the EEOC. Local 100 appeals from this decision, and we affirm.

I.

Local 100 of the Laborers' International Union of North America is a referral union that operates as a hiring hall in Caseyville,

Illinois. Section 709(c) of Title VII requires labor organizations like Local 100 to make records relevant to membership and referral practices and to preserve those records. 42 U.S.C. § 2000e–8(c). Regulations issued pursuant to § 2000e–8(c) specifically require such unions to file with the EEOC an EEO–3 form, which calls "for information about union policies and practices and for the compilation of statistics on the race, color, national origin, and sex of members, persons referred, and apprentices." 29 C.F.R. §§ 1602.22 to 1602.27. Under the regulations, a union must maintain referral and membership records for one year and must keep any records required to complete the EEO–3 form for one year after the due date of the report for which they were compiled. 29 C.F.R. § 1602.28. Covering referral and membership figures over a given two-month period in a particular year, an EEO–3 thus provides the EEOC with a snapshot of employment-referral practices at a referral union. An EEO–3 must typically be filed once every two years.

In March, 1991, the EEOC began investigating Local 100 after receiving allegations that Local 100's referral system discriminated against blacks. During the investigation, an EEOC investigator requested referral records from the union but was told by the union's business manager, Ronald Shevlin, that the union did not maintain any such records. The investigator later learned from Shevlin's assistant that Local 100 kept records but that they consisted of a cardboard box containing slips of paper on which were recorded the names of persons seeking referral each day. Sometime after the investigator's visit, Shevlin discarded the slips of paper.

After uncovering this informal record-keeping system, the EEOC began investigating the union's compliance with Title VII's reporting and record-keeping requirements. The EEOC requested copies of Local 100's EEO–3 reports from 1980 to the present, referral records from 1989 to the present, or an explanation if Local 100 could not produce

[*] The Honorable Joe Billy McDade of the United States District Court for the Central District of Illinois is sitting by designation.

either. The union did not turn over such material and did not offer any reason for its failure, whereupon the EEOC brought suit against Local 100 to demand compliance. The district court conducted a bench trial and found for the EEOC on the grounds that Local 100 had failed to file EEO–3s in 1982, 1984, 1987, 1988, 1990, and 1993. The court ordered Local 100 to comply with EEO–3 filing requirements and to submit an EEO–3 by December 31, 1995. The district court also enjoined the union to report the "name, race, sex, national origin, and social security number of each of its members as of the date of entry of the Remedial Order" and to retain for three years, commencing September 1, 1994, "all referral records ... and other documents showing information about people seeking referrals and about the referrals themselves; ... all membership lists and per capita sheets; and all documents showing the acceptance or rejection of such applications and other requests for membership and the reasons for such acceptance or rejection." This appeal followed.

## II.

On appeal, Local 100 challenges both the district court's finding in favor of the EEOC and the scope of the remedial order. The union asserts that the court lacked sufficient evidence to find the union not in compliance with the EEOC's reporting requirements and that the remedial order improperly demands information and record-keeping that exceed the EEOC's regulatory authority. Both contentions are without merit.

## A.

Local 100's arguments about its compliance with EEOC reporting regulations hinge on factual determinations, which we will reverse only if they are clearly erroneous. *Hughes v. Brown*, 20 F.3d 745, 747 (7th Cir.1994). In the instant case, the district court was clearly correct. Shevlin admitted that he had failed to file an EEO–3 on behalf of the union for 1992 but maintained that he had mailed EEO–3s to the EEOC in all the other years. Yet the EEOC official responsible for EEO–3 reports, Clairice Bryce, testified that she had kept a log of EEO–3s

received since 1988 and that the log showed no entry for Local 100 for 1988, 1990 or 1993. Bryce also testified to having searched microfilm copies of reports filed by unions and discovering that the most recent report Local 100 had filed dated to 1980. Additionally, the regulations required Local 100 to maintain certain application and referral records for one year after the making of a record, and the union admitted that it destroyed applications for referral, as well as the slips of paper the EEOC's investigator had discovered at the union hall, before the expiration of that time period. *See* 29 C.F.R. § 1602.28.

Local 100 counters with opposing evidence, but none of it establishes that the district court's findings were clearly erroneous. Local 100 asserts that Bryce's testimony was suspect on the grounds that Bryce lacked independent knowledge of Local 100 and lacked knowledge of reporting procedures prior to 1988. The union explains that Bryce may have forgotten to record the EEO–3s during her tenure or that the contractor who microfilmed the EEOC's pre–1988 EEO–3s may have forgotten to film the union's. The mere existence of alternative explanations (especially ones as dubious as these) does not leave us with the "definite and firm conviction that a mistake has been committed" and that reversal is appropriate. *United States v. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Absent additional proof, it seems unlikely that the EEOC consistently lost everything Local 100 submitted while maintaining records on other unions. Furthermore, the union responded to the EEOC's allegations of noncompliance solely with Shevlin's testimony that he did mail the EEO–3 forms for all the years in question except 1992. The district court expressly found Shevlin not credible.

With regard to the destruction of applications and the slips of paper, the union argues that it does not use them to prepare its EEO–3 forms since it employs the "visual reporting" method. However, § 1602.28 requires a referral union to maintain referral applications for one year, and the district court found that the slips of paper were relevant to Local 100's referral records. Shevlin's discredited testimony to the con-

trary does not prove otherwise. Finally, it is irrelevant that the EEOC did not notify Local 100 of its noncompliance earlier. The union has no right to such active policing, and we doubt the union really wishes to encourage it.

### B.

■■■ Having determined that the district court properly decided that Local 100 violated the reporting regulations, the question then arises whether the district court's remedy was appropriate. We review the decision to grant an equitable remedy under an abuse of discretion standard, *EEOC v. Century Broadcasting Corp.*, 957 F.2d 1446, 1462 (7th Cir.1992), and a discretionary order "will only be set aside if it is clear that no reasonable person could concur in the trial court's assessment." *Tennes v. Com. of Mass. Dept. of Revenue,* 944 F.2d 372, 381 (7th Cir.1991).

The union asserts that the district court abused its discretion by imposing requirements that extend beyond the relief authorized in § 1602.24. Alternatively, the union submits that the additional requirements impose on the union an "undue hardship" from which it deserves relief pursuant to 29 C.F.R. § 1602.25. We disagree.

■■■ Without question, the injunction to comply with the EEO–3 reporting requirements does not overstep the powers of the district court; the regulations specifically provide for such relief. *See* 29 C.F.R. § 1602.24. The union nonetheless argues that the district court's grasp exceeded its reach when it ordered the union to submit the names and social security numbers of its members to the EEOC, to keep referral records the union does not use in preparing its EEO–3 forms, and to preserve records for three years rather than one year. Requiring the maintenance of referral records is within the bounds of § 1602.28, and so clearly lies within the district court's authority. The fact that the union uses a "visual survey" method to break down referrals by race and does not rely on records does not excuse it from the regulatory mandate to "preserve other membership and referral records (including applications for same) made or kept by it." 29 C.F.R. § 1602.28. Furthermore,

this injunction does not require Local 100 to create new records but to keep those it already makes. While the union is correct that EEO–3s do not normally require a union to identify members by name or to keep records for three years, we think these additions both comparatively minor and a perfectly reasonable and appropriate method of fashioning an equitable remedy in this case. The district court found that Local 100 had a long history of noncompliance with EEOC reporting regulations. Forcing the union to identify individual members and to maintain records for a longer period of time is "relevant" to ensuring that the union is supplying accurate EEO–3 information, *cf. University of Pennsylvania v. EEOC*, 493 U.S. 182, 194, 110 S.Ct. 577, 584, 107 L.Ed.2d 571 (1990), and is clearly tailored to remedying the union's past deficiencies.

■■■ The union's "undue hardship" argument also fails. Local 100 claims that it will suffer because the additional requirements will force it to gather information that it "currently has no way to track." As the EEOC points out, however, much of the Local 100's complaint of undue hardship is addressed toward the difficulties the union would have listing the identity of every referral—something the district court did not order the union to provide. The order only requires identifying members by name. Local 100, the record indicates, has already furnished membership information by race, and the union fails to show how breaking that information down by name and social security number would pose such a hardship. Furthermore, the terms imposed by the court indicate that the union is required only to keep records that it decides to make; the union does not have to create new ones. That it must maintain them for a longer period of time also does not seem to us to demonstrate undue hardship, and it certainly does not prove that the district court abused its discretion in ordering that remedy.

For the foregoing reasons, we affirm the decision and order of the district court.

AFFIRMED.